## COHEN v. PORTLAND LODGE NO. 142, B. P. O. E. et al.

(Circuit Court, D. Oregon. March 5, 1906.)

Nos. 2,926, 2,974.

**1. JUDGMENTS—COLLATERAL ATTACK.**

A suit to redeem from a mortgage which has been foreclosed by a decree of court on the ground that complainant, who was made a defendant in the foreclosure suit, was not legally served with process therein, and his right of redemption was therefore not cut off, is a collateral, as distinguished from a direct, attack on the foreclosure decree.

**2. SAME—JURISDICTION—PRESUMPTIONS.**

The judgment or decree of a court of general jurisdiction acting within the scope of its ordinary powers, and in pursuance of the course of the common law, is aided by a presumption that jurisdiction was regularly acquired as to both the subject-matter and the person, until the contrary appears. Such presumption supplies the essential requisites to jurisdiction as to which the record is silent; but, where it speaks, it imports verity and nothing to the contrary can be presumed in aid of jurisdiction.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 933.]

**3. PROCESS—CONSTRUCTIVE SERVICE—STATUTES—CONSTRUCTION.**

A statute providing for constructive service of summons on persons not within the territorial jurisdiction of the court is to be strictly construed, because in derogation of the common law and the matters required by the statute to be made of record must be so shown, although as to matters not so required the jurisdiction may be aided by presumption.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Process, § 99.]

**4. JUDGMENT—COLLATERAL ATTACK—DECISION OF COURT AS TO ITS OWN JURISDICTION—EFFECT.**

Under B. & C. Comp. Or. § 56, which authorizes constructive service by publication to be made on a defendant by order of the court or judge in certain classes of suits where personal service cannot be made, and the defendant after due diligence cannot be found within the state, and that fact is made to appear by affidavit to the satisfaction of the court or judge, as such section has been construed by the Supreme Court of the state, where the affidavit made tends to prove the required facts and the court or judge adjudges it sufficient, such adjudication is conclusive in a collateral proceeding, although it might be erroneous and reversible on direct appeal for insufficiency of the evidence.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 939.]

**5. SAME.**

In a suit to foreclose a mortgage in a state court of Oregon, service was made on a minor defendant by publication pursuant to an order of the court made under B. & C. Comp. Or. § 56. The affidavit on which the court's order was based set out the issuance of a summons to the sheriff, and that he made return thereon to the effect that such defendant could not with due diligence be found within the state, and that affiant had made diligent search and inquiry by inquiring of one of the executors of the will of the minor's father by whom he was informed that the minor was under his charge and was at the time residing in another state, where he was at school, giving his address. The affidavit concluded with the statement that "this affiant therefore says that personal service of such summons cannot be made on said defendant." *Held*, that such affidavit contained some competent evidence

tending to establish the requisite statutory facts to authorize the substituted service, and that the adjudication of its sufficiency by the court was conclusive when attacked collaterally.

6. INFANTS—PROCESS—SERVICE BY PUBLICATION.

In making service by publication on a defendant, who is a nonresident of the state, under B. & C. Comp. Or. §§ 56, 57, no different or additional procedure is required or necessary to render the service valid because the defendant is a minor.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Infants, § 265.]

In Equity.

See 140 Fed. 774.

The plaintiff is a minor, and seeks by this suit to redeem an undivided interest in lots 5 and 6, block 83, in the city of Portland, or, if impracticable, the whole thereof, from the alleged lien of a certain mortgage executed by Nathan Cohen and Rosa Cohen, his father and mother, to Joseph Hume, to secure originally the payment of the sum of $4,000 loaned by Hume to the said Nathan Cohen. Subsequent to the execution of the mortgage Nathan died, leaving Rosa, his widow, and five children, one of whom has since deceased. Cohen left a will devising the property in question to trustees for the use and benefit of his children. The mortgage having, by indorsement and transfer, come into the hands of Henry J. Biddle, he on March 20, 1897, instituted a suit to foreclose the same, making plaintiff, among others, a party defendant thereto. Service of summons by publication was attempted to be made upon him, who was at the time a minor, under the age of 14 years. A decree of foreclosure having subsequently been entered, the property was sold in pursuance thereof, and by mesne conveyances has come into the hands of the defendant, Portland Lodge No. 142, Benevolent Protective Order of Elks. Plaintiff for cause of suit alleges that such service of summons upon him was insufficient, and not in accordance with the statute prescribing the manner of service by publication, and that, by reason thereof, the decree of foreclosure is void as to him, and of no force, virtue, and effect, and that the defendant is subrogated to the position of Biddle as mortgagee only, and is without legal title to the premises. Wherefore he prays that he be allowed to redeem, etc.

Snow and McCamant, for complainant.

H. H. Northup and Bernstein & Cohen, for defendants.

WOLVERTON, District Judge (after stating the facts). The affidavit upon which the order for publication is based was made by one of the attorneys for plaintiff in the foreclosure suit, and sets out:

"That the amended complaint in said suit was filed with the clerk of said court on the 19th day of November, 1897, and summons thereupon issued. * * * That said summons issued as aforesaid was delivered to the sheriff of Multnomah county, state of Oregon, with directions to said sheriff to serve the same upon the defendants and each of them, and said sheriff has returned said summons to the clerk of this court with his return endorsed thereon to the effect that said defendants Aaron M. Cohen, Moses M. Cohen, and Emanuel Meyer cannot, after due diligence, be found within this state, although diligent search and inquiry for the purpose of finding them have been made. That this affiant has made diligent search and inquiry for the purpose of finding the last-named defendants and each of them as follows: I have inquired of the defendant M. C. Lyon, who is one of the executors of the last will and testament of Nathan Cohen, deceased, the father of said defendants, Aaron M. Cohen and Moses M. Cohen, and he informs me that neither of said minors is at this time within the state of Oregon, and that both of them are at the present time residents of and now are at the Pacific Hebrew Orphan Asylum & Home Society, at No. 600 Devisadero, corner Hayes street, in the city of San Francisco, state of California, and

that that is their present post-office address. That the said M. C. Lyon informs me that he knows personally that said minors are at said place, as he placed them at said institution, which said institution is a school, and that he is in constant communication with the authorities there, and that he has charge of their schooling and education. * * * That this affiant, therefore, says that personal service of said summons cannot be made on said defendants Aaron M. Cohen, Moses M. Cohen, and Emanuel Meyer, and prays for an order that service of the same may be made by publication thereof as is by law provided."

The pivotal question presented for determination is whether this affidavit is sufficient, considered in relation to the cause now pending, upon which to support the order of the court in directing that service of summons upon the plaintiff herein, as defendant in said cause, be made by publication thereof. It should be stated, preliminarily, that the present suit is, in its nature and effect, a collateral attack upon the decree in the foreclosure suit. It does not purpose annulling or vacating such decree, but it proceeds upon the idea that, standing unreversed, with all the force it is entitled to under the law, it is not an impediment to plaintiff's obtaining the relief sought. Indeed, plaintiff concedes, by the very form of suit adopted, that it has some operative effect; for he says that the defendant has, by virtue thereof, been subrogated to the interests of the mortgagee. The true position of plaintiff, however, is that such decree as it now stands is void as to him, without any affirmative action of the court rendering it so, and that, so standing, it is not an impediment to his right to redeem. This is a collateral as contradistinguished from a direct attack upon such decree. Morrill v. Morrill, 20 Or. 96, 25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95.

It may be further premised, in a general way, that the judgment or decree of a superior court intrusted with general jurisdiction, acting within the scope of its ordinary powers and in pursuance of the course of the common law, is aided by an attendant presumption that jurisdiction was regularly acquired, as to both the subject-matter and the person, until the contrary appears. The presumption supplies any omission, where the record is silent as to the essential steps required to be taken or observed as a prerequisite to the acquirement of jurisdiction. Where, however, the record speaks respecting facts or conditions upon which jurisdiction has been assumed, it will import verity, and nothing different or to the contrary will be presumed in aid of the consequent adjudication. If it were otherwise, collateral attack would be unknown to the law, as the presumption would not only supply all omissions, but would also transform a bad and utterly insufficient record into a good and ample one, supporting the judgment or decree in every prescribed essential. The presumption is not to be indulged where the court is possessed of special and limited powers only, unless it may be in so far as it proceeds according to the course of the common law in the acquirement of jurisdiction over the person or the res; nor is it to be indulged where the process prescribed for the acquirement of jurisdiction is special, and not according to the course of common law, as where constructive service of summons is authorized to be made upon persons not within the territorial jurisdiction of the court. In all such cases the essential statutory pre-

requisites should appear to have been observed under what is usually termed a "strict construction," because in derogation of the common law. 17 Am. & Eng. Encyclopedia of Law (2d Ed.) pp. 1073 to 1080, inclusive; Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; Odell v. Campbell, 9 Or. 298; Northcut v. Lemery, 8 Or. 316. But this rule requires nothing to be incorporated in the record that the statute does not so require, and, if omissions appear with reference to the entry of such prerequisites to jurisdiction, the presumption will even then supply the deficiency. Applegate v. Lexington, etc., Mining Co., 117 U. S. 255, 56 Sup. Ct. 742, 29 L. Ed. 892.

This brings me to a consideration of the sufficiency of the affidavit to support the order made and entered requiring service of summons by publication. Section 56 of the statute of the state of Oregon (B. & C. Comp.) provides that when service of summons cannot be made as prescribed by section 55—that is, upon the person or constructively so, as at his dwelling house or usual place of abode—and the defendant, after due diligence, cannot be found within the state, and that fact is made to appear by affidavit to the satisfaction of the court or judge thereof, it or he may grant an order that service be made by publication thereof, in either of three cases; the last being when the defendant is not a resident of the state, but has property therein, and the court has jurisdiction of the subject of the action.

There is no question here as it respects the court's jurisdiction of the subject-matter, and it fully appeared that the defendant had property within the state. From this reading it is manifest that the statute has made it a judicial function of the court or judge to determine from the affidavit whether the plaintiff has been unable, after the exercise of due diligence, to obtain personal service of summons upon the defendant, within the territorial jurisdiction of the court; and this includes the determination, as well, as to whether due diligence has been observed. The sufficiency of the affidavit may be brought to a test upon appeal, or it may be upon a collateral issue such as this; but the basis of inquiry is vitally and radically different in the one case from that of the other. On appeal the question is whether the court or judge has erred in granting the order. What the trial court may have deemed legally sufficient may not be so in the opinion of the appellate tribunal. At the worst, the consequence might be a reversal, and the cause sent back for further proceeding. The party is not sent out of court finally. But, when considered collaterally, the question is whether the affidavit contains matter which, in contemplation of the statute, is sufficient, upon which the court or judge was warranted in passing the order. The question becomes one, not of error, but whether there is any evidence legally sufficient upon which the judicial mind may be satisfied. If not, the order is absolutely void, and the court is without any subsequent jurisdiction; and so is any final adjudication void, and without force or effect. The result is that the party is left without the opportunity of amendment, and is driven to another suit, if any will avail him. The principle is well defined, and has the sanction of adjudicated cases. In Forbes v. Hyde, 31 Cal. 342, 349, Mr. Justice Sawyer says:

"There is a marked distinction between an affidavit which presents some evidence on a vital point, but clearly of a character too unsatisfactory to justify an order for publication of summons based upon it, and an affidavit which presents no evidence at all tending to prove the essential fact. In the former case the judge might be satisfied upon very slender and inconclusive testimony; but, there being some appreciable evidence of a legal character which calls into action the judgment of the judge, he has jurisdiction to consider and pass upon it. He may be wholly and egregiously wrong in his conclusion upon the weight of the evidence, but he has jurisdiction to act upon it, and his action is simply erroneous. His order would, in such case, be reversed on appeal. But, as there was jurisdiction to act, until reversed, or attacked by some direct proceeding to annul it, the order and judgment based upon it would be valid. Such a judgment could not be collaterally attacked. If, however, there is a total want of evidence on any point necessary to be determined, upon which the law requires the mind of the judge to be satisfied as a prerequisite for granting an order of publication, then there is nothing upon which he is authorized to act. The evidence, which is the very basis of his jurisdiction and upon which it depends, is wanting, and his action is without authority. His action is not merely erroneous, for there was nothing to call into exercise the judicial mind. There is no jurisdiction to act at all, and the proceeding is void."

See, also, Staples v. Fairchild, 3 N. Y. 41; Matter of Faulkner, 4 Hill (N. Y.) 601, 602.

And so has Mr. Justice Deady spoken in this court. In McDonald v. Cooper, 32 Fed. 745, 748, he says:

"The order of publication in question was made under this section. That diligence has been used to find the defendant within the state must appear from the affidavit, and a mere statement or assertion therein that the party is a nonresident thereof is not sufficient. Nor is such statement or assertion that diligence has been used a compliance with the statute. The affidavit must contain some evidence of the ultimate fact, besides the asertion of the affiant, on which the judicial mind may act in granting the order. And, however slight and inconclusive this evidence may be, if it has a legal tendency to prove the diligence, and that the defendant could not be found in the state, it is sufficient to give the court jurisdiction, and sustain the order against a collateral attack. But, where there is no evidence of such diligence except the bald assertion of the fact, or that of nonresidence, the order is void, and the court does not acquire jurisdiction."

But it is unnecessary to cite or look for authorities elsewhere. The Supreme Court of the state of Oregon has enunciated the principle in its construction of the statute. Speaking through Mr. Justice Bean, in George v. Nowlan, 38 Or. 537, 542, 64 Pac. 1, 3, it says:

"The statute requires that certain facts shall be made to appear by affidavit to the satisfaction of the court or judge thereof (Hill's Ann. Laws Or. §,56) before an order of publication is made; and where the affidavit tends to prove such facts, and the court or judge adjudges it sufficient, such adjudication is conclusive in a collateral proceeding."

The principle, it may be stated, has the sanction, also, of the United States Supreme Court. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

The question is, therefore, whether there is any evidence stated in the affidavit legally competent upon which to support the court's order for service of summons by publication thereof. It is very clear that an affidavit couched in the language of the statute merely, as that defendant after due diligence cannot be found within the state, and that he is a nonresident of the state, etc., is insufficient, as the statements are sheer conclusions, and are not of facts upon which the court

can draw its own inferences and make its own deductions, and thereby satisfy itself that such conditions do actually exist as the law says must exist as a prerequisite to the order for publication. It scarcely needs citation of authorities to this purpose; but see McDonald v. Cooper, supra; Ricketson v. Richardson, 26 Cal. 149; Young v. Fowler, 73 Hun, 179, 25 N. Y. Supp. 875; Romig v. Gillett (Okl.) 62 Pac. 805. The usual or equivalent expression of the courts is that the ultimate facts of the statute must be shown or proven by the affidavit by setting out the probative facts upon which the ultimate facts depend, and the latter must be sustained in legal contemplation by such probative facts. That is to say, the probative facts set out must be sufficient to justify the court in being satisfied that the ultimate facts required by the statute exist. Victor M. & M. Co. v. Justice Court, 18 Nev. 21, 1 Pac. 831; Alderson v. Marshall, 7 Mont. 288, 16 Pac. 576; Palmer v. McMaster, 13 Mont. 184, 33 Pac. 132, 40 Am. St. Rep. 434. Tested in view of a collateral attack. and not upon an appeal or error, the affidavit is sufficient when the proofs exhibited thereby have "a legal tendency to make out a proper case in all its parts for issuing the process." Pike v. Kennedy, 15 Or. 420, 427, 15 Pac. 637, 640. "The rule may be stated thus," says the Supreme Court of Nebraska, in Atkins v. Atkins, 9 Neb. 191, 200, 2 N. W. 466, 471: "If there is a total want of evidence upon a vital point in the affidavit, the court acquires no jurisdiction by publication of the summons; but where there is not an entire omission to state some material fact, but it is insufficiently set forth, the proceedings are merely voidable." To the same effect is the language of the court in Harris v. Claflin, 36 Kan. 543, 13 Pac. 830.

Now, by a reference to the affidavit filed in the case of Biddle v. Cohen et al., it appears that a summons was issued and delivered to the sheriff of Multnomah county, being the county in which suit was instituted, with directions to serve, and that the sheriff made return thereof to the effect that, after due diligence and inquiry, he was unable to find the defendant within the state, and further that the affiant had made diligent search and inquiry for the purpose of finding defendant, which was by inquiry of Mr. M. C. Lyon, one of the executors of the last will of Nathan Cohen, deceased, the father of defendant, who informed him that defendant was not at the time within the state of Oregon, and that he was then (using the words of the affidavit), "at this time," and "now"—expressive of the present —a resident and at the Pacific Hebrew Orphan Asylum & Home Society, at No. 600 Devisadero, corner Hayes street, in the city of San Francisco, state of California, which was his (speaking in the singular, while the affidavit ran in the plural, including the defendant, plaintiff herein, and his brother) present post-office address, and that the said Lyon was in constant communication with the authorities of said institution. The affidavit concludes, "This affiant therefore says that personal service of summons cannot be made on said" defendant, and prays an order, etc.

The strenuous insistence of counsel for plaintiff is that the matter set forth therein, both as to the diligence of the sheriff and as to the information acquired by the affiant, is mere hearsay, and was there-

fore insufficient evidence upon which the court could be legally satis-
fied of the jurisdictional facts essential for passing the order. A sum-
mons is servable by the sheriff of the county in which the defendant
is found (B. & C. Comp. § 54) ; and his return is prima facie evi-
dence of the material matters therein stated. Huntington v. Crouter,
33 Or. 408, 54 Pac. 208, 72 Am. St. Rep. 726. It could not well be
prima facie evidence as to what was done beyond his territorial
jurisdiction to make the service. Hence the return in the present
case would be prima facie evidence only that the defendant could not,
after due diligence, be found in Multnomah county; not that he could
not be found elsewhere in the state. To supplement this diligence, the
affiant states that he made inquiry of Lyon. And who is Lyon? He
is one of the executors of the last will of Nathan Cohen, the deceased
father of defendant, a person who should know the whereabouts of
the defendant, and his place of residence or domicile, or at least who
was very likely to know—as likely, perhaps, as any other person of
whom the affiant might have inquired. The fact of the inquiry, there-
fore, of Lyon is shown, and the information obtained from him is
also shown, which indicates very clearly that the defendant was at the
time a resident at the Pacific Hebrew Orphan Asylum & Home So-
ciety in San Francisco, state of California, and was there at that par-
ticular time, and was not within the state of Oregon. And so the
affiant says that personal service of summons cannot be had upon the
defendant. There was due diligence shown, prima facie, to find the
defendant in Multnomah county. The sheriff's return is sufficient for
that. The averment that summons was placed in the hands of the
sheriff, with instructions to serve, and that he made his return, and
the manner thereof, was an averment of facts, and not hearsay. Nor
was it necessary for the affiant to produce the return of the sheriff.
Yet it must be admitted his showing would have been stronger if he
had appended a copy of the sheriff's return to, or made it a part of,
the affidavit itself; but the fact that he did not do so does not make
the matters stated as to the issuance of summons, etc., hearsay.

As to the further diligence exerted, the affiant states what he did
and what he ascertained; and if, based upon the information thus ob-
tained, he had made the further averment, either flatly or upon infor-
ation and belief, that defendant was a nonresident and at the time
without the state, and that personal service could not be made upon
him within the state, in all probability there would have been no ques-
tion raised as to the sufficiency of the affidavit, and yet these would
have been the statement of conclusions that the court or judge must de-
duce from the facts shown, say the authorities. The affiant was not re-
quired to support his affidavit by supplementary affidavits of the person
or persons inquired of, nor to produce them as witnesses for the
court's examination, and there is no way of getting the facts as to
the affiant's diligence and the result of his inquiries to the court
or judge except his statements in his affidavit as to what he had done
and ascertained, and unless he has, or has acquired, personal knowl-
edge, he must of necessity state what he has ascertained or heard
from others, which, in its ordinary acceptation, is hearsay. Yet it
is the only way that the court may be apprised of the diligence put forth,

and of what has been ascertained through inquiries which the party is bound to prosecute so as to determine as to the residence of the defendant, and whether service can be personally had. I am of the opinion that, although hearsay in a general sense, it is just such evidence or statement of facts as is within the contemplation of the statute. It shows diligence in respect of the endeavor to make personal service of the summons.

The cases most confidently relied upon by counsel as holding that hearsay evidence is obnoxious to the statute and rules governing the practice relative to the granting of the order that service be made by publication are Mackubin v. Smith, 5 Minn. 367 (Gil. 296); Empire City Sav. Bank v. Silleck (Sup.) 90 N. Y. Supp. 561; Peck v. Cook, 44 Barb. (N. Y.) 549; Kahn v. Matthai (Cal.) 47 Pac 698, 699; Columbia Screw Co. v. Warner Lock Co. (Cal.) 71 Pac. 498; Plummer v. Bair (S. D.) 80 N. W. 139; Romig v. Gillett (Okl.) 62 Pac. 805. These are all causes on appeal where the test is upon an entirely different principle, as we have seen, from that when the record is questioned collaterally. In the Minnesota Case all that appeared in the affidavit was that defendant could not, after due diligence, be found within the state (which was a conclusion only); and what the court said as to what was meant by the words "appear by affidavit"—that is to say, "that such legal evidence going to establish the fact must be given as would be received in the ordinary course of judicial proceedings, and not conclusions, opinions, or hearsay"—was uttered with reference to the manner in which the fact was attempted to be stated in that particular affidavit. In the Empire City Bank Case the court, after setting out the matter thought to be hearsay, says:

"If the affidavit alleged the principal facts upon information and belief derived from the sources and based upon the grounds stated, and had shown that the summons had been issued to the sheriff, and returned unserved by him, the proof of the nonresidence and the inability to make personal service in the exercise of due diligence would sufficiently appear."

And concludes:

"Where the order is sought on the ground of nonresidence, there must be some competent evidence of nonresidence, and that plaintiff has been or will be unable, in the exercise of due diligence, to make personal service."

In Peck v. Cook, the court, speaking through Mr. Justice Smith, says:

"The affidavit upon which the order in question was made, in addition to averring that Cook, the defendant, in respect to whom the order was asked for, 'is not a resident of this state, * * * but his residence is in the township of York, in the state of Ohio,' alleged also that 'he frequently visits the county of Livingston,' in this state, 'and pretends to own and hold a valuable house and lot in Lima,' in said county. These facts, it seems to me, preclude the presumption that Cook could not by due diligence have been found within this state, even if that presumption would have arisen upon the other averments in the affidavit standing alone."

In the Kahn-Matthai Case the affidavit stated that plaintiff's attorney placed the summons and complaint in the hands of five different persons for service, and that they returned them with the information that they could not find the defendant, or see her. The court said of the statement that it was hearsay, but it comes from the fact that, where

144 F.—18

service is attempted to be made by a person other than the sheriff, his return should be made by affidavit showing the nature of the effort made to serve the party, and where practicable the reasons why such service could not be had. In Columbia Screw Co. v. Warner Lock Co. the averments of the affidavit, which was made by plaintiff's attorney, were in effect that the allegations of the indebtedness were made and stated upon information received from the plaintiff. It was not shown what the information was that the attorney received from his client, and there was not even a statement by the attorney that he believed the matters and things to be true as set forth. So the affidavit was held insufficient. In the case of Plummer v. Bair the affidavit did not show, except by "gratuitous assumption," that personal service could not be had within the state, notwithstanding the defendant was a nonresident. Romig v. Gillett is a clear case of an allegation of a conclusion upon information and belief, and, of course, insufficient, especially on appeal.

Recurring again to the affidavit herein, it shows the exercise of some diligence in the effort to find the defendant within the state, and the result of such diligence, whereby the information was obtained that the defendant was a resident of San Francisco, Cal., and was, at that particular time, in said state. The very natural and strong inference is that he was a nonresident of the state of Oregon, as he could not well have a legal residence in two states at one and the same time. Based upon this information, and by reason of the non est return of the sheriff of Multnomah county, he says that personal service cannot be made upon the defendant. It must be conceded that there is here some evidence—that is to say, some probative facts —upon which the judicial mind could have acted, and presumptively did act, in granting the order. The case of Beach v. Beach, 6 Dak. 371, 43 N. W. 701, is illustrative, and indicates very well what is necessary. "The affidavit," says the court, "should not only have stated diligence had been used to serve the defendant with summons within the territory, but in what the diligence consisted, what had been done to find her."

In Pike v. Kennedy Mr. Chief Justice Lord says: "The law requires proof that the defendants cannot be found after due diligence, or proof of such state of facts as show that diligence could avail nothing to effect service upon them [the defendants] within the state," as that the defendant was at the time a nonresident, and without the state. See, also, McDonald v. Cooper and Atkins v. Atkins, supra. These authorities, together with the authority of Neff v. Pennoyer, 3 Sawy. 274, Fed. Cas. No. 10,083 (on its final disposition on a writ of error to the Supreme Court of the United States, Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565), Marx v. Ebner, 180 U. S. 314, 21 Sup. Ct. 376, 45 L. Ed. 547, George v. Nowlan, supra, fully sustain the view that the affidavit is quite sufficient, when tested by the collateral attack upon the decree of the court in the foreclosure suit, to sustain the order directing the service of summons by publication. As previously indicated, if the affidavit, after stating as to the information obtained from Lyon, had concluded that therefore affiant avers that defendant is a nonresident of the state, and is now without the

state of Oregon, and that personal service cannot be had upon him, there is but little doubt that the affidavit would have been technically good. The omission of such averment, which is supplied defectively by the averment that therefore personal service of summons cannot be made, etc., amounts to nothing more than defective statement of a good cause, and while the irregularity may have rendered the order vulnerable on appeal it is not rendered void as wanting in jurisdiction to make it.

It is next contended in behalf of the plaintiff that the service of summons upon him, as defendant in the Biddle foreclosure case, was insufficient, because, being a minor under the age of 14 years, the papers were not mailed to Henry Mauser in San Francisco, Cal., in whose care and control he was, and with whom he resided at the time. The contention proceeds upon the idea that subdivision 3, § 55, B. & C. Comp., should be read into, and thereby become a part, of sections 56 and 57, providing when service of summons may be made by publication thereof, and the manner of such service. I am unable to concur in that view. Section 55 provides for personal service only, sections 56 and 57 for an entirely different kind of service; and it is only when personal service cannot be had that the latter service, or service by publication, can be resorted to. There is no reference in sections 56 and 57 back, in any form, to section 55 as to the manner of service, and it was apparently intended that those sections should furnish within themselves a complete procedure for service by publication. Sections 56 and 57 make no mention of minors in any way, and yet they are concededly not without the purview of those sections. Otherwise there would be absolutely no provision for service of summons upon nonresident minors, or persons of that class, who could not be found or served personally. The provisions are general, and comprise all persons who are legally susceptible of service. Section 57 provides for mailing a copy of the summons and complaint to the nonresident defendant when his place of residence is unknown, but it makes no exception in the case of a minor, either explicitly or by reference to the manner of personal service, so that but the one service by publication is prescribed, whether the defendant be an adult or a minor. The Oregon Supreme Court, in the case of Bank of Colfax v. Richardson, 34 Or. 518, 54 Pac. 359, 75 Am. St. Rep. 664, refused to construe section 57 with reference to section 51, so as to require the deposit in the post office to be made by the sheriff or his deputy, or a person specially appointed for that purpose. Neither is there any more reason for construing sections 56 and 57 with reference to 55 for determining the manner of perfecting service upon a minor by publication. The Supreme Court of Georgia has given a like construction to a somewhat analogous procedure. Gefken v. Graef, 77 Ga. 340, 342. The provisions of the statute are sufficiently discernible from the text of the opinion. The court says:

"The Code, section 4185, enacts that, if the defendant does not reside in this state, service of the bill or any order of the court may be made by publication. The language of the statute is 'a defendant who resides out of the state,' and it can make no difference that the defendant may be a minor.

He may be served by publication as therein provided. The mode of service provided by section 3263a of the Code applies only to minors resident within this state, and not to nonresident minors, who fall within the provision of section 4185 of the Code."

See, also, Hale v. Hale (Ill.) 33 N. E. 858, 20 L. R. A. 247; Bryan v. Kennett, 113 U. S. 179, 5 Sup. Ct. 407, 28 L. Ed. 908.

I am therefore of the opinion that the service of summons in the Biddle Case, upon this plaintiff as defendant therein, was sufficient without mailing the papers—that is, a copy of the complaint and summons—to Henry Mauser at San Francisco, Cal., the person with whom he resided at the time. Nor is the case of Clark v. Gilmer, 28 Ala. 265, opposed to this view. In that case it seems the service of summons by publication was regulated by certain rules under the statute, and these rules appear to have required, where service was being made by publication upon a minor who was out of the state, that a copy should be mailed also to the mother of the minor. Our statute makes no such provision.

These considerations lead to the dismissal of plaintiff's complaint herein, and such will be the order of the court.